Case No. 23-12459, Jackson v. Catanzariti Good morning, Your Honors. May it please the Court, I'm Mario Williams. I'm here for the appellate, Miguel Jackson. I'd like to get started by just making one quick statement, then I can answer. Well, obviously, you all can ask me a question before I make that statement. But I would like just one second. This case is not an excessive force case. It's basically the way we treat the use of force in prison settings is making a distinction. Was the force used to maintain and restore order? Or was the force used maliciously in a sadistic manner intentionally to cause harm? But the one thing it's not about is was the force used maliciously and sadistically to cause harm? But it's OK if the person deserved it. So what happened in this case, at this trial, is that there was an influx of evidence that actually, in our argument, was highly prejudicial. Why? And this is what's so important for inmates. And I'm talking about throughout the 11th Circuit in this country, because wherever state you're in, you use stuff as persuasive authority. The issue is when you have a video, uncontroverted video evidence, Miguel Jackson, whether you want to call it a riot, whatever you want to say what happened before, he was handcuffed. He was standing on the second level of the dormitory, surrounded by four to five officers who absolutely did not fear anything. One of them had a hat in his hand. The other one was just casually standing there. The video demonstrates this. He was not resisting one bit. So what's the issue? Whether or not, as opposed to the jury, Sergeant Catanzariti leaned in and hit him with a flash, what we call the flashlight. The defense, I mean, well, the state, said, hey, that was a wand to try to figure out if he had contraband. But then the warden, their own expert came in and said, I don't see a wand. I see a flashlight. So then the question is the rules. The plain language of the rules, starting at 401, was introduction of whether or not they were trying to smuggle in marijuana, was the introduction of evidence of whether or not Miguel Jackson started the fight, punched somebody, or as my colleague, who I actually like very well, said, hey, basically, this guy started this fight. Now he wants to get paid. That was the introduction. That's when it all started. Was the introduction of anything. As I understand the essential argument you're making, it is that the district court abused his discretion in the course of the trial by allowing the film to be played, or at least by allowing the entirety of the film to be played, right? No, Your Honor, my argument is. So there was an error in allowing the entire film in? Oh, in the. I understood that one of your arguments, just I want to be able to frame the argument. One claim you make is that the district court abused its discretion by allowing the entire film to be played, by the entirety of what happened before, during, and after. Well, Your Honor, I. Maybe I misunderstood the argument. And if I have, just tell me what the argument is. The argument is allowing evidence of marijuana, who struck who first, who allegedly started the fight. Does it, starting at rule 401, does not. But how did that evidence come in? By way of video or just testimony independent of the video?  OK, so the error you're citing is that some of the officers involved in the merely improperly were allowed to say how the story began. Yes, and this all started in the pretrial. But it wasn't the playing of the film that was there. No, Your Honor, it's the evidence that was introduced saying, hey, Miguel Jackson punched this man enough. Because what really happened here in the dollar, the dollar amount, the $1 that was given for a recognized unconstitutional beating. And the irony of it is, and we'll get to this as far as not allowing me to withdraw and go forward on the officers that were outside the building, the hardest claim to prove, which was, was he beaten by officers outside the building, which had no video, was the one that they actually gave him a dollar for. So it is quite clear that a rational, I'm not saying I can't speak for speculation, but it is reasonable to believe that this man got $1 for an unconstitutional beating because he was an alleged gang member, which has nothing to do with whether or not Sergeant Catanzariti. Let me tell you why I'm confused. OK. The first argument you make on page 12 of the blue brief, this is the heading you give it. You say, the district court erred by permitting evidence for which unambiguous video evidence rendered wholly irrelevant and prejudicial. And then you say that the district court erred by permitting this evidence. I took that to be the film itself. No, Your Honor, what I meant by that was permitted evidence which an uncontroverted video demonstrated was irrelevant. OK, so there's no objection to the video coming in. No, Your Honor. So when you have a bit, and this is so important, again, for inmates. Inmates already face bias. They already face the fact that most of the times, something comes in to say, hey, you were in here for rape or you were in here for armed robbery, anything which makes people think, oh, man, you're a bad guy or a bad woman. So now we have a video that shows somebody not meeting every element of the law that would say, within a prison or outside of a prison, excessive force if you beat this person who's compliant, not resisting, and restrained. But somehow, we start listening to a trial that says, hey, this guy tried to smuggle in marijuana through basketballs. We start hearing in the trial, hey, Jackson started the fight. He punched this guy. We start hearing in the trial allusions that another officer got hit so hard in the face he had to go to the hospital. We start hearing in the trial that shanks were thrown underneath the door after everybody was put back in their dorm. That has nothing to do. It is wholly irrelevant. Under Rule 401, it doesn't have the tendency to make the fact more important. Help me, counsel, please. Whether Jackson punched Kanzenoritty or not is most material to this question. It's a relevant fact question, isn't it? No. That's not relevant. You know why that's not relevant? No, I don't. It strikes me that if, in the course of a prison riot, an inmate takes a swing at an officer, and the officer responds, he may have still exceeded his authority with what he did, but the predicate seems relevant. What am I missing here? I'll tell you exactly what you're missing. And this is the problem. I apologize if I cause confusion. That would be relevant if we didn't have any video, Honorable Judge Marcus. So if I take a swing, if I'm the inmate, if I'm Jackson, and I punch Kanzenoritty, and then we don't have video, and Jackson comes up with a broken nose, and Kanzenoritty testifies and says, man, when this guy swung at me, I hit him in his nose. He didn't get that injury when he was handcuffed. That would be one issue. That's what you're talking about. But what I'm talking about is a video that where Jackson was not injured, but he was handcuffed. Let me ask the question. Let me ask a question this way. This is so you can help me understand the claim. If I don't understand the claim, I can't get to first base.  Is it your view, then, it isn't that the video shouldn't have been played. Is it your view that that's all that should have been allowed in, and that the officer should not have been allowed to explain how he saw the event? I'm saying that. I mean, did you move to keep the officer off the stand or to limit what he could be asked? Oh, I objected about the introduction of all this evidence. That's all over the record. Because I know this. I've been doing prison litigation forever. I already know the game plan. Come in, create bias against the inmate for what he's in for, and whatever he did that quote, unquote, calls it. Therefore, you forget about the fact of the unconstitutional act. You just punish him. That's what happened here. And to answer your question directly, that's almost exactly what I'm saying to the extent that once that video shows that Jackson was compliant, handcuffed, not resisting. So just so I boil it down to its finest point, you're asserting error in allowing the officer to say, this guy took a punch at me. That should not have come in. Is that right or wrong? Yes, that's right. That's right. He shouldn't have been allowed, when asked what happened, he shouldn't have been allowed to say, the inmate took punches. He shouldn't have been allowed to say Jackson punched him. That's what I'm asking about, punching. He shouldn't have been allowed to ask that question. That's right. Because the answer, if the officer says, if Officer Contender really says, hey, he took a swing at me, that is implying that somehow Jackson deserved to be hit after he complied with the law. If you say, hey, Jackson punched me in the face and broke my jaw, and then I come to you, Your Honor, and say, OK, well, wait a minute. Let me ask you some facts here. Did that happen before he was handcuffed and compliant and the so-called riot stopped? Yes. No, it happened before all that. Yes, it happened before all that. OK, then why are you justified in hitting him after he's handcuffed and compliant? This is extremely important to get this clear. Because the moment you see handcuffed, compliant, on an uncontroverted video, saying that he was punched in the face, saying that there was marijuana, you're allowing the state to basically dissolve the law. You're allowing the state to switch the focus. The focus is, did you violate the constitutional rights of this man by violating the law? By maliciously hitting him, whether it's for revenge or not, whether it's vindictive or not, your job is to control yourself. Once the riot or whatever you say is over with, you are not allowed by law, by the Constitution, to beat a man who's compliant and handcuffed. That's black letter law. That's the law in every circuit in this country. Let me ask you a question. If you look at the film itself, I've seen the accounts, but I haven't looked at it yet. If you look at the film, does it show clearly that he was handcuffed and compliant and that then he was beaten by the officer? Without question. What the film shows, this is what I've argued before we got to trial and at trial. The upstairs video, handheld video, shows four or five officers surrounding Jackson. Jackson like this, four or five officers around him. He's not moving. And then suddenly, Catanzariti comes in and leans in and appears to strike downwards with the back end of a flashlight, which their own experts said was a flashlight. Jackson falls back. So my issue was, OK, hey, look, there's a tribal issue on whether or not he struck him right there, causation. It looks like that to me. It looks like that to everybody I played the video. But hey, maybe a jury says he didn't get struck right there. But there's no issue as to whether he was compliant and non-resisting. There's no issue that Jackson got his nose broke afterwards. And the jury, like I said, and this goes into whether you allow me to withdraw or not and go forward on the officers, the irony of it all is that I made all this big deal about the video. The jury gave him a dollar for something that he couldn't even see on video. They just said, I think he got his injury outside the dormitory, beat up by officers, and Catanzariti failed to intervene. That's what makes the failure to allow me to withdraw so ironic. Because I get to the courthouse. I got two other lawyers with me that are not here today. But they are my partners. But nobody could come today. So I'm trying to make a group decision on, hey, it's not that the case is just about Catanzariti. It's that, hey, we're going up against law enforcement officials. And maybe we do need to streamline this or not to Catanzariti and the other officers. So I say to the court, hey, you know what? I'm just going to move to dismiss. These officers that are dealing with the case outside, what happened outside where there is no video, we do have video of officers escorting Jackson and the other KJ, Kelvin Stevenson, outside, complying again, hands behind their back. But once they hit that door, you don't see anything. The judge says, no, they're out. So then we're in a situation where, hold on, OK, if you're going to entertain fees and attorney's fees and costs and all this kind of stuff, I'd rather just go forward on these guys. Because I'd be somebody's judgment. I filed a lawsuit against, I forcibly had to file a lawsuit against probably 25 officers because I kept doing open records requests, putting big circles around faces, saying, can you tell me who this is? How many times was the trial reset before it took place? Before going to trial? Two, I believe, two times. I think the problem that I see, just speaking for myself, is that there are plenty of opportunities to dismiss these defendants. And the morning of the trial that had already been reset twice seems like a pretty late time to do that. This is what I would like you to consider, Honorable Judge Graham. I get what you're saying. First of all, I want to acknowledge that. The issue, though, is did I have the legal ability to do it? The first argument, I think the whole issue about whether or not I could go forward against them and withdraw my motion, my oral motion, Rule 41 is about dismissing actions, not defendants. We've already decided that, though. OK. So my issue is, did I have the legal right to do it? Did I have the legal right, once they started saying, what you're saying, Your Honor, hey, hold on, this is too late, Mario. If you're going to do this, then we have to have fees and costs. And all this kind of said, OK, well, that's OK. I'm just going to withdraw it. And then we'll go forward on it. Ended up getting a verdict on that issue. But OK, that's no problem. You want to do that? I'll just go ahead and do the trial right now against everybody. No, you can't do it. The issue is not whether it was too late, because I was willing to go forward with the trial after that issue came up. Do you think that you unequivocally withdrew your request? I want to talk about that. You're talking about the point where Your Honor down, Honorable Judge Randall, who I've been in front of, and have a lot of respect for him, when he said, hey, but hold on, Mr. Williams, you're not even listening to what I have to say. Because that's what happened. I said, if you're going to do that, I'll just go ahead and go forward with the trial. Let me take a break, comes back. But hold on, Mario, you're not even listening to what I have to say. OK, what do you have to say? Well, then I'm going to allow for costs, and then you can put it, OK, well, wait a minute. But the problem that I want you all to think about is Honorable Judge Randall said, they're out. He wasn't coming back from that. Once I tried to say, hey, hold on, I'd rather go, no. They're out. We just got to figure out in what manner and what form they're out. So even if it was late to the table, I still showed the willingness to go forward, and Honorable Judge Randall showed the willingness not to do it and said, no, they're out. And that's quoted in the brief. They are out. We just have to figure out how. And then pick Rule 42, which is improper in itself, should have been under Rule 21, in my opinion, as many times as I've gone through this. Rule 41's entire actions, Rule 21 dismissal parties with justice involved, or something like that. So yes, coming the day of and saying, hey, look, I think we should let these guys out. But I think the heart of the question, and I'd like you to help me with it, the heart of the question is, weren't you in a position to move to dismiss the seven long before you got to the starting gate when the trial was about to begin? But I was in a position to move and dismiss a lot of people that I dismissed. But the heart of the question is, in my opinion, it's not that whether I could have dismissed them before. We didn't make that decision as a team before. The question is, once I made the decision day of, and then they said no. But their argument is, basically, you could have made that decision earlier. And the very fact that you didn't caused them a great deal of time and expense in litigation. And that, therefore, the court should find that you were a day late and a dollar short. It was too late in the game. That's the argument, at least. What's the answer? The answer is, none of that matters on the moment I say, hey, I'll go forward with the case. Then the focus switches. So if you say, I'm a day late and a dollar short, and hey, Mario, what are you doing? Why are you coming here on the day of, even though the transcript should reflect one of opposing counsel said, hey, we do this all the time in state court, but we're in federal court, as if that's the huge difference. But if you say, I'm a day late and a dollar short, then I say, hey, OK, no problem. I beat some of your judgment on you guys. Let's do it. Let's go to trial. I was doing this as a strategic thing, but if it's a big problem for you, let's do it. Let's go to trial. And the judge then says, no. You already made the motion orally. They're out. I just have to figure out how. Then the focus is not, hey, Mario, you came late with it. The focus is, Mr. Weir is willing to go forward, but I'm not going to let him. Then the issue is a legal issue. Should I be allowed to say I'm going to go forward or not? That's the issue in our opinion, not whether or not I could have filed a motion to dismiss them five years earlier. This case has been going on for 13 years. 13 years. So that is not the issue before this court, is whether or not I could have done it five years, 10 years, one day earlier, three days earlier. The issue is, once I said I want to go forward, I'd rather go forward than face all this stuff about attorney's fees and costs. The judge says, they're out and doesn't allow me to go forward. And was that legally correct? Was that an abuse of discretion? And then I don't, you know, I've been up here so many times, I don't want to waste your time. I've said a lot, and I'll just close up. You've answered my question. I'll close up by saying this just one more time. Because it is very important for, you know, inmates can't rely on cell phones and all this stuff. The only thing they have is those surveillance cameras. You cannot, the whole point, even if you said, Mr. Williams, you are completely wrong about 401. You are completely wrong about 402. 403, does the probative value, is the probative value substantially outweighed by the prejudicial harm? We're talking about convicts. You start telling somebody. Mr. Williams, I'm going to give you your full rebuttal back if you sit down now. Oh, you want me to? OK, no problem, no problem. Good morning. May it please the court. I'm Roger Chalmers with the Georgia Department of Law for appellees Joseph Catanzariti, Caleb Harrison, and five of the seven defendant appellees who had judgments granted in their favor on the first morning of trial. Context is critical here, and a lot of it is missed in the argument that you just heard. The complaint in this case was filed in December of 2012. It alleged, it named 39 correctional officer defendants, and it alleged that every defendant except two, two who happened to be holding cameras, beat plaintiffs Kelvin Stevenson and Miguel Jackson with a hammer, a flashlight, and a baton. It would be 11 years before any defendant had the opportunity to go before a jury and prove the falsity of those claims. There's a second. I understand the part of the argument about why so many defendants were sued in the first place was a lack of information production by the state. Is that not the case? There's no issue of that in this case. And that there is no point. I understand, but if you're making an argument that too many people were sued in the first place, I think it's irrelevant why so many people were sued in the first place. Well, there's another way to go about finding information to support claims. And one is to file your suit not towards the end of the statute of limitations period and serve discovery and take a 30 v. 6 deposition and find out who should be named in the case. But the point here is that the case was extremely old by the time it got to trial. The second really important context point here, and you would believe from reading the briefs and from listening to the argument that we just heard that there was only one plaintiff in the case and there was only one use of force, sort of like the Kaufman case, the one and only case cited as support for the evidentiary issue before the court. Miguel Jackson was not the only plaintiff. The use of force that Mr. Williams described was not the only claimed use of force. And I would point the court to the pretrial orders submitted by the parties at documents 412 and 468, to plaintiff's exhibits where he admitted all of the video and all of the injury photos, which is at document 478, to the video of the incident, which covers far more than the little incident that Mr. Williams referred to, and to the stipulations of fact at document 481, which talk about all that was an issue in the case. The backhanded move that Mr. Williams described came after a full-on riot and melee. The claim, as I mentioned, was that a hammer was used to strike a prone inmate, Kelvin Stevenson, the other plaintiff. That claim was proved false. The jury didn't believe it. But in order to determine whether force was used maliciously or sadistically to cause harm, or instead in a good faith effort to quell a riot, the jury obviously had to consider all of the circumstances. There were two issues in the appeal, and I'll try to touch on both of them. They're both reviewed under the abuse of discretion standard. The first, of course, is the Rule 41 A or B decision that Judge Hall made to enter judgments for seven defendants on the morning of trial. The second is the evidentiary question that I just referred to. I'll take the first, Rule 41, or inherent authority, and I'll try to address it quickly. After a motion for summary judgment has been filed, that's the trigger. The dismissal, a voluntary dismissal, can be made only by court order and only on terms the court considers proper. That trigger, after a summary judgment motion has been filed, is not really descriptive of when this motion was filed, is it? Because it was filed, it was made five years after the close of the discovery, three and a half years after summary judgment motions were decided, and fully a year and a half after. Let me ask the question this way. Plainly, if they wanted to dump the case on the seven, they could have done it before the morning of the trial. We get to the morning of the trial. The essential question, as I see it, is whether, in fact, they unambiguously said to the judge, we want to dismiss these seven defendants. They say that in two ways at two times, and then they say something else that I want to quote to you. The lawyer says, I would like to say for the court, if you're going to make us pay cost, I would rather withdraw the motion and just go forward because this is crazy to me. You're correct, Judge Marcus. So you have two statements that are made earlier where he says, I'm moving the court to dismiss the seven because I have, I think it's strategically and tactically in my client's interest to do so. And there's a little bit of discussion and the defense lawyers get up and say, it's really so late in the day, blah, blah, blah, it's cost us a whole lot of money. And then he comes back when it looks as if this is going to be granted, and he says, I would like to say for the court, if you're going to make us pay cost, I would rather withdraw the motion and just go forward because this is crazy to me. I think his argument is, he didn't really, when you read the thing in context, he didn't really move to dismiss and the judge abused its discretion. That's his argument, because whatever else he said on the front end, he backed off on the back end with the statement I read. I think that's the argument. You're reading it the same way I am, Judge Marcus. That's exactly what the argument has been made, but there was not a withdrawal. There was a conditional statement made, and it was made, importantly, after two questions from Judge Hall. Remember, we're assembled seven minutes before trial was to start. The jury, veneer, or panel is sitting in the state's borough courtroom. We take a separate small courtroom to argue this motion, and Judge Hall asked twice in the course of that hearing, question, well, you're asking to dismiss them. Answer, that's right. He also asked, but you don't wish to pursue those claims is what you're telling me. Answer, exactly. Then, as you point out, there were three points in time when Mr. Williams said, if costs might be awarded, then I would rather go forward, or if fees would be awarded, then I would rather go forward, and that is at document 517 at pages 22, 23, and 24, but never was there an unequivocal and a clear statement that I withdraw my motion. I want to go forward with the trial against nine defendants. Instead, it was made patently clear to Judge Hall that a strategic decision had been made, a strategy decision, by the way, that threw a wrench into the defense counsel's plan because we tried a very different trial than what we'd all prepared to try over the last year and a half. Let me also say that when Judge Hall came back, you can see this from the transcripts. It can be a little bit hard to appreciate when you're looking at it cold. Judge Hall took argument. He stepped off the bench. He considered the matter. He came back, and he made very clear, I'm not awarding costs. I'm not awarding fees. Here's what I'm doing. I'm entering judgments for the seven that you put to the expense of getting ready for trial, for the seven who are ready to argue their case and prove what you claimed was false. I'm entering judgment for them. Judge Marcus, after that point in time, you can look at the transcript, not a word about withdrawal. I would suggest one-  Did the district court ever actually impose costs or fees? The court has not. That issue has been put on hold while this appeal has been pending. So your answer is his comment was conditional and that wasn't sufficient to constitute a withdrawal from an unambiguous application to dismiss. It's as simple as that. It is as simple as that, but he did not make a withdrawal motion of any kind, equivocal or unequivocal, once he was informed of the terms of the release of those seven defendants. The terms were plain and simple. We're entering judgment, and there was no statement of withdrawal after that point in time. You think there needs to be an unequivocal statement or a specific motion to withdraw or something else? I think it needs to be clear to the district judge what the plaintiff wants to do. And remember, this is an abuse of discretion standard. So if you can look at this transcript and if you can come away with the notion that it was reasonable for Judge Hall to conclude that these lawyers and these plaintiffs had made a strategy call for the trial they wanted to put on, it was a trial against two defendants, not nine, and that was a final decision. Those were their words. It was a final decision for them, and the trial was gonna go very bad for them if there were nine defendants. He made the call from that discussion that Plaintiff's Counsel unequivocally did not want to put on evidence against all nine defendants. And what is the natural result when you get to that point? We've had 10 years of litigation, a year and a half of trial prep, seven defendants ready to prove their cases, the plaintiff with a jury assembled, not selected yet, but assembled, and who says, I'm not gonna put on any evidence. The natural conclusion is judgments would be entered, and there was not a withdrawal once that term was made clear. Before you move on to the second issue, just so that I'm clear, have you filed a motion with the District Court for fees and costs? Counsel for Eason and Atticle have filed their motion for fees. All parties have filed a bill of costs. For my clients, Your Honor, we have not yet filed a motion for sanctions or fees, but we intend to do so. Thank you. Your Honor, as I said- I have a question before you get into your argument about the second part. I have a question about the second part, which is would you agree with your friend on the other side about his evidentiary arguments if Jackson had been the only plaintiff? Yes, absolutely. And that would be Kaufman, wouldn't it? In Kaufman, there was one use of force. An inmate had been unruly in a jail. There was no question the inmate had acted out, but the inmate was put in a restraint chair, restraints were applied, and after those restraints were applied, the officer tased the inmate twice. Clearly, that's all that matters if the video is absolutely clear. So if this case only involved Miguel Jackson as a plaintiff, and if this case only involved that one incident in the video, then yes, it may be a stronger argument that other information really doesn't matter. But in that case, you would presume the plaintiff would move for summary judgment, as the plaintiff did in Kaufman. So we have a very different case here. We have a case, as I said, where the primary use of force, the chief complaint, is that an inmate, Stevenson, was beaten with a hammer. But that occurred minutes before what Mr. Williams is talking about now. And to understand whether that force was a violation of the Eighth Amendment, the jury had to know what happened. The jury had to know why officers were in the dormitory with a hammer. I see I'm over my time, I apologize. The jury needed to know why officers were in the dormitory with a hammer, channel locks, and a screwdriver, what happened to start the incident, what the danger was that Catanzariti perceived, which caused him to give strikes to Stevenson, and what the risk was to the officers. And the jury, and remember, the plaintiffs put on the photos of their injuries. The jury was entitled to hear how those injuries were caused. They were caused in the riot, not by a backhanded movement by Catanzariti. Did it matter they found a small quantity of marijuana in his cell? It did matter.  Because the entire reason the inmates were assembled is because many of them were affiliated with Mr. Jackson, who was in a gang and a leader of a gang. Well, that's a different question, whether they could have brought out that he was or was not a member of a gang. My question was, what relevance did it have that they found a contraband dope in the cell? It explained to me. To whether or not the force was excessive or not in the riot that broke out. It explained the reason why the officers were in the dormitory, and it explained why inmates at midnight on a New Year's Eve were strapped, meaning fully dressed and wearing boots, not in clothing to go to bed. It explained that inmates were acting on loyalties and ready to assist the other inmates and start an assault on officers, and that's exactly what happened. It created an extremely dangerous situation which needed to be explained to the jury. I've gone over my time. We'd ask the court to affirm in all respects. Thank you. May it please the court. I'm Anne Rita McGovern on behalf of Joshua Eason, here only on the limited issue regarding the waiver. Just to get straight to the point, not only was there reiteration by Judge Hall, multiple times, that appellants sought to dismiss the claims, but there was only, as Mr. Chalmers indicated, a conditional withdrawal. What's even more important, it's really disingenuous to indicate there was truly an attempt to withdraw based on statements by counsel that it was against his client's own best interest to proceed. He said, man, it's just not going to go well for us, maybe, if we have these people in here. To say that he was going to withdraw when it was clear that it was not in his client's interest, it was clear based on a pattern of conduct which, to correct on the prior question, it was actually four times the case was continued from trial. But he said, I want to go forward twice. How else can that be interpreted? He said if. Each time he said if. If you are going to assess costs, if you're gonna do fees, if you are upset. If, if, if. And at no point were costs and fees assessed. They have not been as of the current date. Those ifs, those conditions have never occurred. He had the opportunity during all this time. Nothing was filed with the court. Nothing was submitted clarifying there was an unequivocal withdrawal. There was no unequivocal withdrawal at any point in time. And it is imperative that a district court be able to control the courtroom through both 41B and then he submitted himself to 41A. He could have asked the defendants, hey, I'm gonna dismiss y'all. It's Friday before trial. Will y'all agree we'll do a stipulation to the court? That was never done. That's a very simple thing. It would have taken nothing to do that. After 10 years of litigation, it would have prevented us from driving down, completing our trial preparation, having our clients there, and doing everything we needed to do to try the case after more than a decade. To dismantle the ability of a trial judge to be able to take such actions when it is necessary to protect defendants under 41A, which is there to protect defendants who have expended serious resources for preparation for trial. And then there was broad inherent authority. And based on the request of defendants for the dismissal, pursuant to 41B during that hearing, Judge Hall, we believe under either provision of the rule, had the option to do the dismissal. 41B requires, excuse me, a motion from the defendant which was not filed. Are you saying? Pardon me. Are you saying that if the court had not gone forward with the voluntary dismissal, your clients would have filed under 41B? Yes, and I see my time is up. May I answer your question? Yes, under 41B and his inherent authority, it is appropriate because defendants orally requested that they not be allowed to proceed when the conditional withdrawals were made. On the record, we pointed out to the court based on contumacious conduct and contempt for the court processes over the course of a decade, and we laid out in detail how the court should, through its inherent authority in 41B, dismiss the case and enter judgment. Did you cite 41B in that part of the colloquy? We specifically referenced the, I specifically spoke to the inherent authority of the court and 41B, the language of the conduct and behavior and contempt for the court processes was laid out in great detail during the course of that hearing. Did the court make any findings on that request as far as a clear pattern of delay? It was- Or I guess more importantly, did the court specifically find that lesser sanctions would not suffice other than dismissal? I don't know that he used magic words on that, but as Mr. Chalmers noted, he did take a break and he did consider the matter. He came back out and did make reference, and I can't recall the exact words from the hearing transcript, that he was deciding to go ahead and enter it under 41A. There were references, and part of it is being there, Your Honor. The redness of Judge Hall's face, and his manner, and his demeanor, and his frustration was really quite evident in that we'd had this case continue to Friday before trial after finding it- We understand your argument. So it's hard sometimes to convey. It was very clear. I don't remember the exact words he used, but there was no lesser way in light of all the history of the many issues that occurred over the past decade in this case. Thank you. May it please the Court, Mark Glidewell on behalf of Darius Attical, one of the appellees that was dismissed on the morning of trial. Most of my argument was going to be the entire waiver issue that's already been discussed, but I wanted to sort of highlight something that I think's very important. It was in response to, I think, a question from one of you to the Appellants' Counsel about why these folks weren't dismissed earlier. And it's in my brief, it's referenced in the brief that we filed on behalf of Mr. Attical, on two occasions. The first time, when the lawyers were ordered to meet to prepare the pretrial order about 10 months before the actual trial, I specifically asked Appellants' Counsel, let my guy go. I repeated that at the aborted pretrial conference in March of 2023, a few months before trial, when it was aborted because of the competency issue that was disclosed for the first time at that pretrial conference at Stevenson. All that's referenced in the brief. I think the key here is that Appellants' Counsel said, if fees are going to be, if fees are awarded, the judge, Judge Hall, could have assessed fees that day. He could have. There's several of the cases, including the McGovern case, which is cited by the appellant, that is part of the order of dismissal. But that was not done in this case. All Judge Hall did was set forth a procedure where the appellees could make a motion for those fees. And upon hearing that, that was the point in time that the appellant should have moved to withdraw his dismissal motion. And he did not do that. He was silent after the order was provided to him by Judge Hall. And I see my time has expired. Thank you, Your Honors. Your Honors, I'd like to start with one quick thing. The record demonstrates absolute diligence on my part. Now, this idea that I sued 30-something people, I begged through pre-litigation, open records requests, circling people, just tell me these names, I don't want to sue everybody. Just tell me these names. They wouldn't do it. Then as soon as I filed emergency motion, let me get these names and dismiss everybody. Judge said, no, let's go forward with discovery. The idea that I somehow just frivolously named a whole bunch of people without trying my best in every respect for him to come and second guess my strategy, oh, well, you should have filed a little bit earlier and got into discovery. Why wouldn't you identify people in an open records request if you know you're the government, you don't want me to sue 38 people, but you want to identify who it was? That doesn't make any sense. Second thing is the conditional withdrawal. So we need to talk a little bit about case law. What are we doing here? Because if Judge Hall hasn't entered costs and fees, if he does do it, am I right back up on appeal on the same thing? The issue is, is when I said, I'd rather go forward, I said from the start, if you're going to do attorney's fees and costs, I'd rather go forward. So is it that he says, no, I'm not gonna do fees and costs, enter a judgment under the wrong law, because the one thing you never heard from opposing counsel, and I like all of them, is, hey, 41's for entire actions, and an entire action wasn't dismissed here. So what are we doing? Let's talk about the case law aloud, the Ninth Circuit, which is the most persuasive. So if Honorable Judge Randall enters fees and costs, am I gonna say, then come back up on appeal, say, well, then now that that condition hasn't been met, I should have been allowed to go forward then? No. I think their argument is that he did not order fees and costs then. Okay, that's what I'm saying. So if he orders fees and costs next week, then I'm appealing on the same grounds. You should have allowed me to go forward. I don't think, I don't understand the decision, a potential decision for us to be, since there are no fees and costs involved, then that means that the withdrawal was improper. I think the argument is, was there a withdrawal of the motion or not? And I believe there was. I believe when I say I'm willing to go forward, if this, if we're gonna have, because what happened was there was a big, oh man, okay, all right. It was just a strategy decision. But it's no problem. I'll go forward with this case. No problem. The idea that. But weren't you really saying to the district court judge, I move to withdraw, I move to dismiss. And now the issue of fees has come up. And if upon an application for fees and costs you grant it, then I would prefer to withdraw the motion and just go forward with the seven guys. You didn't know at the time whether the trial judge was or will impose fees or not. And so you were on the horns of a dilemma because the district judge was not obliged to answer that question at that time. He might have, but he didn't have to. He had a trial in front of him. He had a jury queuing up, but he just wanted to get going. So you had a dilemma in front of you, did you not, Mr. Williams? And the dilemma was, I don't know if the district judge is gonna impose fees or costs. I can't make him answer the question now because he'd be perfectly within his discretion to wait till later. And I'm not formally saying I wanna withdraw because my calculation is the risk of fees and cost is too great. So all you said is if fees and costs, then I want out. Well, didn't you, I think their point is that you had to say something more to the trial judge, like, I don't know if you're gonna impose fees and costs. The risk is too high. I withdraw my motion. And they say, you didn't say that. And therefore, the district court didn't really abuse his discretion because you didn't, with clarity, in an unambiguous way, say, I don't wanna run the risk. I'm withdrawing the motion. That's what they say. What is the answer to that? That once I say, it's true that at one point, I said, look, it really wasn't, in my opinion, she's talking about judge with red face and all this kind of stuff. I don't agree with that. But in my opinion, the context of this, judges, was, hey, they're making such a big deal about this. Let's go forward. It doesn't matter to me. I thought this was gonna be, oh, yeah, man, we don't want our guys to stand trial. Oh, but since you're making a huge deal about pursuing sanctions and fees and costs, no problem, let's go forward. If you read that. I think if you had said that, your argument would have been more powerful as opposed to saying, if fees and costs are imposed, then I wanna withdraw my motion, as opposed to, they've made too big a deal, judge. I'm withdrawing my motion. Let's go forward with the seven. I believe the context, and I read it again, is that. I was just like, let's go forward. And I even turned to oppose it. You wanna go forward? Let's go forward. That's in there. That's absolutely in there. But on an abuse of discretion standard, though, if it's not, if you could read it both ways, then why wouldn't we be obligated to understand that the district judge didn't think that you were withdrawing the motion? Because of the case law. So we're talking about facts, but we gotta apply them to some law. Abuse of discretion is one thing, but the cases that were cited demonstrate, hey, until an order and conditions are met, you have time to withdraw. That's what the case that I relied on, and the 11th Circuit case is distinguishable, obviously, because that person, the judge said, well, you admitted that you didn't mind paying the costs, and then they actually entered the ruling based on Rule 11, because they found that the claim, that the first claim you made was frivolous. But this is a situation where these facts have to be applied to law. And they haven't presented any law. They're presenting equity. They're saying it's unfair, Mario, that you did this. But I'm saying, unfair or not, I did it. And the law allows me to withdraw. So at some point, we have to apply what I said to some law. And I'm saying, when I say, hey, that's it, you guys are screaming and yelling and arguing with me in the hallway, let's just go forward, especially if you're gonna do fees and costs. I've got a question returning to the other issue, which is related to the, I'm looking at the verdict form. And as you are aware and explained on question four, the jury did find that your client was present, or that one of the officers was present when someone else used force on Miguel Jackson. Was there a particular person that you alleged used that force, or were you saying, we don't know who did it, but it happened outside? Oh, no, the defendants. That's how we got past summary judgment. The judge ruled in the summary judgment that the defendants that I said, hey, I'll just go, even though we have a case against you, I'm gonna go ahead and let that go. During trial, I said, hey, I never said we don't know who did it, I just said he was beat by guards outside. What I'm saying is the jury form doesn't reflect, the jury found that either of these two defendants specifically used force on- That's why I said it was ironic judgment. That's what I'm saying, is failure to intervene against whom? Against prison guards, other prison guards generally, or was the theory of a specific, failed to intervene against a specific prison guard? No, because they were let out, it was just failure to intervene against prison guards generally, because they were let out by the judge. Had they stayed in, those were the prison guards that I said were outside, who actually beat him on the fence. You see what I'm saying? That's what I was trying to understand. I couldn't bring them up specifically by name, because they had been out, but that's what was alleged, and that's what we want summary judgment on. We want summary judgment on the people outside, even though there was no video, because we produced enough evidence to create a triable issue as to whether that these specific officers beat him outside while Catanza really watched. Thank you, I understand that. And so, I just wanna wrap, can I just, did you want something on, Judge Pratt? No, you can wrap up. Okay, I just wanna wrap up. He mentioned Kelvin Stevenson. Kelvin Stevenson, and that's why you had to talk about marijuana, that's why you had to say, this is not about Kelvin Stevenson. Remember, the facts that I talk about is that you said this about Miguel Jackson. I didn't say anything about Kelvin, it doesn't matter that Kelvin Stevenson was another plaintiff. What I said was prejudicial and harmful are the specific statements you made about Miguel Jackson, which I believe reasonably infers that he got $1 because you thought he was a gang member, held smuggle and drugs, and punched officers. That's all I have. Thank you. Our last case.